IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| DAVID L. SANDERS, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security, )<br>    Defendant. )<br>_____) | Civil No. 3:13cv813 (DJN) |

## MEMORANDUM OPINION

David L. Sanders ("Plaintiff") is 37 years old and previously worked as a store laborer and commercial cleaner. On January 4, 2011, Plaintiff applied for Social Security Disability ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act") with an alleged onset date of July 1, 2008, claiming disability due to learning disability and an inability to read and write. The claim was denied initially on May 20, 2011, and upon reconsideration on July 15, 2011. Plaintiff appeared before an Administrative Law Judge ("ALJ") on August 2, 2012, and the ALJ denied his claim on August 31, 2012. On September 19, 2013, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner of Social Security.

Plaintiff seeks judicial review of the ALJ's decision in this Court pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred in finding that Plaintiff's condition did not meet listing § 12.05(C). The matter comes before the Court by consent of the parties pursuant to 28 U.S.C. § 636(c)(1) on the parties' cross-motions for summary judgment, which are now ripe for review.

Having reviewed the parties' submissions and the entire record in this case,[1] for the reasons set forth below, the Court DENIES Plaintiff's Motion for Summary Judgment (ECF No. 14); GRANTS Defendant's Motion for Summary Judgment (ECF No. 16); and AFFIRMS the final decision of the Commissioner.

## I. BACKGROUND

### A. Plaintiff's Education and Work History

Plaintiff is 37 years old and completed the seventh grade. (R. at 31.) While in school, Plaintiff took special education classes. (R. at 31.) Plaintiff could not read and could not write except for his name. (R. at 31-32.) Plaintiff began taking GED classes, but dropped out after one session due to frustration over his inability to read. (R. at 262.)

Plaintiff worked for American Mufflers, a mechanic shop, in New York from 1996-2007. (R. at 230.) He worked five days a week, totaling about 20-30 hours each week. (R. at 231.) While still living in New York, Plaintiff worked for the Board of Education and the Village of Westbury in 2007 and 2008. (R. at 200.) Plaintiff's duties for both of these employers involved cleaning. (R. at 33.) After moving from New York to Virginia in 2009, Plaintiff could not find a job in a car shop. (R. at 179, 262.)

### B. Plaintiff's Medical History

On May 14, 2011, Karen Russell, Psy. D., evaluated Plaintiff's mental status and performed an IQ test. (R. at 261.) During the examination, Plaintiff spoke clearly and at a normal pace, and his thought process appeared organized and goal-directed. (R. at 263.)

---

[1] The administrative record in this case has been filed under seal pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

Plaintiff exhibited adequate long-term recall and Dr. Russell observed that Plaintiff's concentration, attention and general memory appeared similar to someone of "limited intellectual limitations." (R. at 263.) Plaintiff's judgment and insight functioned adequately to ensure his safety. (R. at 263.) However, he would not be able to manage his finances if he received disability funds. (R. at 264-65.) Plaintiff had no significant levels of depression. (R. at 265.)

Plaintiff's full scale IQ score registered at 62 and his verbal comprehension IQ score measured at 68. (R. at 264.) Dr. Russell noted that Plaintiff had relative weaknesses in his processing speed, working memory and use and understanding of vocabulary. (R. at 264.) Dr. Russell opined that Plaintiff had mild mental retardation and he fell within the extremely low range of functioning. (R. at 265.) Dr. Russell also determined that Plaintiff could perform simple, routine, repetitive tasks without impairment. (R. at 265.) Further, Plaintiff maintained the basic ability to comprehend and follow one-step instructions. (R. at 265.) Plaintiff could relate to co-workers and handle the daily stresses of working, but was limited to structured environments. (R. at 265.)

C.  Plaintiff's Testimony

Plaintiff testified before the ALJ on August 2, 2012. (R. at 28-44.) Plaintiff stated that he could not read or write, except that he could write his name "a little." (R. at 32.) Plaintiff worked for the Board of Education for three months in a janitorial position and then for the Village of Westbury for two to three months in a similar position. (R. at 33-34.) These were seasonal jobs, offering only summer hours. (R. at 38-39.) Plaintiff also worked in a janitorial position at a temple. (R. at 35.) Plaintiff quit working at the temple, because he felt like he could no longer perform some of his duties. (R. at 38.) Plaintiff had no issues performing his

3

duties of sweeping and picking up boxes, and if a supervisor told or showed Plaintiff what to do, Plaintiff could complete the task without supervision. (R. at 39, 50.)

Plaintiff had a driver's license and used it to drive to the store. (R. at 36.) When earning his license, Plaintiff listened to the test on headphones and guessed when he had to fill in the circles, because he could not read the answers. (R. at 37.) When Plaintiff lived in New York, he had a girlfriend, but since moving to Virginia, Plaintiff had not made friends, mainly sticking to himself. (R. at 40, 42.) Plaintiff lived with his brother's ex-girlfriend. (R. at 41.) He spent his days watching television and smoking cigarettes on the back porch. (R. at 43-44.) Plaintiff had trouble sleeping, occasionally had suicidal thoughts, and sometimes cut and burnt himself. (R. at 48.)

### D. Function Report

On April 3, 2011, Plaintiff completed a function report with the help of his friend Katrina Samuels. (R. at 239-46.) Plaintiff reported no difficulty tending to his personal hygiene. (R. at 240.) Plaintiff made sandwiches for lunch, but did not cook, because he could not read the directions to prepare a meal. (R. at 241.) Plaintiff needed reminders for when it was time to eat, and he needed someone to prepare breakfast and dinner for him. (R. at 239, 241.) Plaintiff cleaned the house and ironed clothes, but he required instructions to complete these tasks. (R. at 241.) Plaintiff had no problems getting along with others and he spent time outside of the house with family friends at church and other events. (R. at 242, 244.)

Plaintiff only needed to be accompanied by someone when he went to appointments. (R. at 242.) He could drive, walk and ride a bicycle. (R. at 243.) He could count change and handle a savings account with help, but could not pay bills or use a checkbook. (R. at 243.) Plaintiff understood simple instructions "pretty well," but could not recall all of the steps of complex

directions. (R. at 244.) Plaintiff had difficulty holding intelligent conversations, remembering, completing tasks and understanding. (R. at 244.) Plaintiff did not handle stress well and could not handle changes in his routine, because the routine "ke[pt] him on track." (R. at 245.)

E.   Third-Party Testimony

During the hearing on August 2, 2012, Ms. Samuels also testified. (R. at 53.) Ms. Samuels lived with Plaintiff. (R. at 54.) She recalled that Plaintiff worked at American Muffler for three years as a shop cleaner. (R. at 55-56.) Ms. Samuels tried to find Plaintiff a job in Virginia, but found it difficult because of his lack of education. (R. at 57-58.) Although Plaintiff acted depressed when he lived in New York, he appeared more depressed after moving to Virginia. (R. at 62.)

F.   Vocational Expert Testimony

Lori Cowan, a Vocational Expert ("VE"), testified before the ALJ on August 2, 2012, and the ALJ asked the VE a number of hypotheticals. (R. at 63-67.) First, the ALJ asked the VE to consider whether an individual similarly situated to Plaintiff with regard to age, work experience, education level and illiteracy, who had no exertional limitations and who could understand and carry out short, simple verbal instructions, could carry out Plaintiff's past relevant work or other work. (R. at 66.) The VE determined that such an individual would be able to perform all of the past relevant work performed by Plaintiff. (R. at 66.) Next, the VE determined that an individual who could tolerate the stresses of working and relate to co-workers, but was limited to structured, supervised environments, would not be able to perform Plaintiff's past relevant work. (R. at 67.) Finally, the VE determined that an individual similar to Plaintiff, who needed occasional supervision, could perform Plaintiff's past relevant work. (R. at 67.)

G.   Non-Treating Medical Opinions

After reviewing Plaintiff's records, Leslie E. Montgomery, Ph.D., A.B.P.P., diagnosed Plaintiff with a primary severe impairment of mental retardation, but found no secondary impairment. (R. at 74, 84.) Plaintiff had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation. (R. at 74, 84.) Dr. Montgomery found that Plaintiff was not significantly limited in his ability to: (1) remember locations and work-like procedures, (2) understand and remember very short and simple instructions, (3) carry out very short and simple instructions, (4) sustain an ordinary routine without special supervision, (5) work in coordination with or in proximity to others without being distracted by them, (6) make simple work-related decisions, (7) be aware of normal hazards, and (8) take appropriate precautions and travel in unfamiliar places or use public transportation. (R. at 75-77, 85-87.) Plaintiff had moderate limitations in his ability to: (1) understand and remember detailed instructions, (2) carry out detailed instructions, (3) maintain attention and concentration for extended periods, (4) perform activities within a schedule, (5) maintain regular attendance and be punctual within customary tolerances, (6) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (7) respond appropriately to changes in the work setting, and (8) set realistic goals or make plans independently of others. (R. at 75-77, 85-87.) Plaintiff had no social interaction limitations. (R. at 76, 86.)

Patricia Bruner, Ph.D., reviewed Plaintiff's records on reconsideration and found that Plaintiff did not have a primary impairment, but had a secondary impairment of mental

retardation. (R. at 94, 104.) Dr. Bruner opined that Plaintiff experienced the same limitations as determined by Dr. Montgomery. (R. at 95-97, 105-07.)

## II. PROCEDURAL HISTORY

Plaintiff protectively filed his current applications for DIB and SSI on January 4, 2011, claiming disability due to learning disability with an inability to read and write, beginning on July 1, 2008. (R. at 205, 209.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration. (R. at 110, 116, 126, 133.) On August 2, 2012, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 26.) On August 31, 2012, the ALJ denied Plaintiff's claim, finding that Plaintiff was not disabled under the Act. (R. at 22.) The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 6.)

## III. QUESTION PRESENTED

Did the ALJ err in determining that Plaintiff's condition did not meet listing § 12.05(C)?

## IV. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court must determine whether substantial evidence in the record supports the Commissioner's decision and whether the proper legal standards were applied in evaluating the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). Substantial evidence is more than a scintilla, is less than a preponderance and is the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Id.*; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

To determine whether substantial evidence exists, the Court must examine the record as a whole, but it may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (citation and internal quotation marks omitted); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)) (internal quotation marks omitted). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, are conclusive and must be affirmed. *Hancock*, 667 F.3d at 476 (citation omitted). While the standard is high, if substantial evidence does not support the ALJ's determination or if the ALJ has made an error of law, the district court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; *Mastro*, 270 F.3d at 177. An ALJ conducts this analysis for the Commissioner, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied and whether substantial evidence supports the resulting decision of the Commissioner. *Mastro*, 270 F.3d at 176-77.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity"

("SGA").[2] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. *Id.* If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); *see also* 20 C.F.R. § 404.1520(c). To qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c).

At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to his past relevant work[3] based on an assessment of the claimant's residual functional capacity ("RFC")[4] and the "physical and mental

---

[2] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

[3] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[4] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR

9

demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. *Id.* The burden of proof remains with the claimant through step four of the analysis, such that he must prove that his limitations preclude him from performing his past relevant work. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hancock*, 667 F.3d at 472.

However, if the claimant cannot perform his past work, the burden then shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (citing *Yuckert*, 482 U.S. at 146 n.5). The Commissioner can carry his burden in the final step with the testimony of a VE. When a VE testifies, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all of the claimant's impairments, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents all of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Id.* If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

---

96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.*

10

## V. ANALYSIS

### A. The ALJ's Opinion

At the first step of the sequential evaluation process, the ALJ found that Plaintiff last met the insured status requirements of the Act on June 30, 2009, and had not engaged in SGA since Plaintiff's alleged onset date. (R. at 17.) At the second step, the ALJ determined that Plaintiff had a severe impairment in the form of mild mental retardation. (R. at 17.) Although Plaintiff alleged depression, the ALJ deemed it non-severe, because no evidence of treatment existed in the record. (R. at 17.)

Next, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. (R. at 18.) The ALJ considered Plaintiff's mental impairment under listing § 12.05. (R. at 18.) Although Plaintiff had significantly subaverage general intellectual functioning with deficits in adaptive functioning that initially manifested during the developmental period before age 22, Plaintiff did not meet the other requirements of the listing. (R. at 18.) Specifically, the ALJ found that Plaintiff did not meet § 12.05(A), because Plaintiff did not depend on others for personal needs and had the ability to follow directions, as shown by his employment history. (R. at 18.) Plaintiff's condition did not meet § 12.05(B), because Plaintiff did not have a valid, verbal performance or full scale IQ of 59 or less. (R. at 18.) Although Plaintiff's IQ score of 62 fell within the requirements of § 12.05(C), Plaintiff did not have another physical or mental impairment that imposed an additional and significant work-related limitation. (R. at 18.) Finally, Plaintiff did not satisfy § 12.05(D), because although Plaintiff met the full scale IQ requirement of 60 through 70, he did not display two or more marked limitations. (R. at 18-19.)

11

In assessing Plaintiff's RFC, the ALJ determined that Plaintiff maintained the ability to perform work at all exertional levels, but experienced nonexertional limitations. (R. at 19.) Plaintiff had illiteracy in both reading and writing, and was limited to understanding and following through with short, simple verbal instructions while requiring occasional supervision. (R. at 19.) At the fourth step, the ALJ found that Plaintiff could perform his past relevant work as a store laborer; therefore, Plaintiff was not disabled under the Act. (R. at 21-22.)

Plaintiff challenges the ALJ's decision, arguing that the ALJ erred in determining that Plaintiff did not meet the requirements under listing § 12.05(C). (Pl.'s Mem. of Law ("Pl.'s Mem.") (ECF No. 15) at 5.) Defendant responds that substantial evidence supports the ALJ's decision. (Def.'s Mot. for Summ. J. and Mem. in Supp. ("Def.'s Mem.") (ECF No. 16) at 1.)

 B. The ALJ did not err in determining that Plaintiff did not meet the requirements of listing § 12.05(C).

Plaintiff argues that the ALJ erred in finding that Plaintiff's condition did not meet the additional impairment requirement of listing § 12.05(C). (Pl.'s Mem. at 5.) Specifically, Plaintiff argues that his illiteracy constitutes an additional impairment that causes additional limitations in the form of dependency on others, ability to perform simple tasks and limited ability to understand and comprehend directions. (Pl.'s Mem. at 6-7; Pl.'s Reply Mem. (ECF No. 17) at 3-4.) Defendant maintains that substantial evidence supports the ALJ's decision. (Def.'s Mem. at 14-18.)

Plaintiff has the burden of proving that he meets or equals a listing. *Yuckert*, 482 U.S. at 146 n.5. The listings "were designed to operate as a presumption of disability that makes further inquiry unnecessary" and, consequently, require an exacting standard of proof. *Sullivan v. Zebley*, 493 U.S. 521, 532-33 (1990). "For a claimant to show that his impairment matches a

listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530.

The listing for an intellectual disability requires Plaintiff's condition to satisfy the "diagnostic description of the introductory paragraph and one of four sets of criteria" listed in paragraphs A through D to meet the listing requirements. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00. Specifically, to meet listing § 12.05(C), Plaintiff must demonstrate:

> Intellectual Disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. Thus, to meet the listing, Plaintiff must demonstrate: (1) an IQ score between 60 and 70, (2) significantly subaverage general intellectual functioning with deficits in functioning before age 22, and (3) a physical or other mental impairment imposing an additional and significant work-related limitation. 20 C.F.R. pt. 404, subpt P, app. 1, § 12.00; 20 C.F.R. pt. 404, subpt P, app. 1, § 12.05; *Illig v. Comm'r of Soc. Sec.*, __ F. App'x __, 2014 WL 2937036, *2 (3d. Cir. July 1, 2014); (Pl.'s Reply Mem. at 3; Def.'s Mem. at 14-15).

Here, the ALJ determined that Plaintiff's condition did not meet the requirements of listing § 12.05(C) for an intellectual disability. (R. at 18.) The ALJ found that Plaintiff had a severe impairment of mild mental retardation that caused Plaintiff to experience deficits in adaptive functioning that met the requirements of the introductory paragraph of the listing. (R. at

17-18). Further, Plaintiff's full scale IQ registered 62, which is within the range required by paragraph C. (R. at 18.) However, the ALJ concluded that Plaintiff failed to meet the listing, because he did not have a physical or other mental impairment imposing an additional and significant work-related limitation. (R. at 18.) The Court will address each requirement of the listing.

### 1. IQ Score of 60 Through 70

The ALJ determined that Plaintiff's full scale IQ registered at 62; therefore, Plaintiff satisfied the IQ criteria of the listing. (R. at 18.) The parties do not dispute Plaintiff's full scale IQ as measured by Dr. Russell. (Pl.'s Mem. at 5-6; Def.'s Mem. at 6, 15; Pl.'s Reply Mem. at 3.)

### 2. Deficits in Adaptive Functioning

The next prong of the listing requires that Plaintiff demonstrate significantly subaverage general intellectual functioning with deficits in functioning before age 22. 20 C.F.R. pt. 404, subpt P, app. 1, § 12.05. Such deficits "limit functioning in one or more activities of daily living, such as communication, social participation and independent living." DSM-5, at 33 (American Psychiatric Association 2013). "Deficits in adaptive functioning can include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health and safety." *Atkins v. Virginia*, 536 U.S. 304, 309 n.3 (2002).

Plaintiff argues that Plaintiff has deficits in adaptive functioning because of his illiteracy and his IQ score. (Pl.'s Mem. at 7-8.) Defendant makes no argument to the contrary. Indeed, the ALJ found that Plaintiff met this prong, because Plaintiff has mild mental retardation. (R. at 17-18.) Even though the parties have no dispute, the Court addresses the substantial evidence supporting the ALJ's finding.

14

Plaintiff's IQ score of 62 would presumptively reflect Plaintiff's IQ before age 22, because IQ remains relatively the same throughout one's lifetime. *Luckey v. U.S. Dep't of Health & Human Servs.*, 890 F.2d 666, 668-69 (4th Cir. 1989); *Justice v. Barnhart*, 431 F. Supp. 2d 617, 620 (W.D. Va. 2006). However, IQ score alone does not demonstrate deficits in adaptive functioning. *Justice*, 431 F. Supp. 2d at 620 (citing 67 Fed. Reg. at 20,002). Instead, Defendant may rebut the presumption of the mental impairment through evidence of Plaintiff's daily activities. *Id.* (citing *Hodges v. Barnhart*, 276 F.3d 1265, 1269 (11th Cir. 2001)). Here, though, other evidence exists to demonstrate that Plaintiff had deficits in adaptive functioning.

By definition, intellectual disability means "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. The term intellectual disability replaced the term "mental retardation" that was used in previous versions of the listings. DSM-5, at 33 (American Psychiatric Association 2013). Here, the ALJ found that Plaintiff suffered from mild mental retardation. (R. at 17.) Further, the ALJ found Plaintiff to be illiterate in regard to reading and writing. (R. at 19.) The Fourth Circuit has found that "the evidence that [claimant] could barely read or write was a clear manifestation of mental retardation occurring before age twenty-two." *Luckey*, 890 F.2d at 668. Therefore, Plaintiff met this prong of listing § 12.05(C).

        3.     A Physical or Other Mental Impairment Imposing an Additional and Significant Work-related Limitation of Function

The final prong of the listing requires that Plaintiff show "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. Plaintiff does not contend that he suffers from a physical impairment that would satisfy this part of the listing; as such, the issue becomes whether

Plaintiff demonstrated another mental impairment to meet the listing. *Id.* Therefore, Plaintiff must show another mental impairment — separate from Plaintiff's diagnosed mild mental retardation — that causes an additional significant work-related limitation of function. *Id.*; *Luckey*, 890 F.2d at 669; *Kennedy v. Heckler*, 739 F.2d 168, 172 (4th Cir. 1984). This other mental impairment cannot be not merely a manifestation or symptom of his mental retardation. *Hartzog v. Barhart*, 189 F. App'x 98, 100 (3d Cir. 2006); *Buckner v. Apfel*, 213 F.3d 1006, 1012 (8th Cir. 2000).

Plaintiff argues that his illiteracy constituted another mental impairment that caused additional and significant work-related limitations of function in the form of dependency on others and inability to do more than simple tasks with basic instructions. (Pl.'s Mem. at 6-7; Pl.'s Reply Mem. at 3-4.) However, the ALJ found that Plaintiff's condition did not meet this prong of listing § 12.05(C), because Plaintiff only suffered a severe impairment in the form of mild mental retardation and did not experience an additional mental or physical impairment.[5] (R. at 17.) The ALJ did not err in making this determination.

Two circuits have discussed the issue of other mental impairments constituting an additional impairment necessary to establish listing § 12.05(C). In *Buckner*, the Eighth Circuit, in a published opinion, found that the claimant's alleged additional impairments of a learning disability, lack of good judgment, inability to speak clearly and get along with others, and difficulty concentrating and reasoning constituted only mere symptoms of mental retardation. 213 F.3d at 1012. Because these symptoms stemmed from the claimant's mental retardation, they were not distinct additional impairments and did not meet the listing requirement. *Id.* In an

---

[5] The ALJ noted that although Plaintiff alleged depression, it was not severe under step two of the analysis. (R. at 17.) Plaintiff does not challenge the ALJ's finding regarding Plaintiff's depression and does not contend that this condition meets the requirements of this prong of § 12.05(C).

unpublished decision, the Third Circuit addressed the issue of illiteracy as an additional impairment directly. *Hartzog*, 189 F. App'x at 100. In *Hartzog*, the court found that, absent evidence to the contrary, the claimant's illiteracy appeared to be a symptom of mental retardation. *Id.* Therefore, the claimant did not meet listing §12.05(C), because he failed to establish "an impairment in addition to his mental retardation." *Id.* Other Courts have reached similar decisions. *See, e.g., Luckey*, 890 F.2d at 668-69 (illiteracy constitutes a manifestation of mental retardation demonstrating adaptive functioning deficits); *Thomas v. Comm'r. of Soc. Sec.*, 2010 WL 1254788, *14 (N.D. Oh. Mar. 25, 2010) (illiteracy should not be considered as an additional impairment to a claimant's mental retardation).

Substantial evidence supports the ALJ's determination that Plaintiff's illiteracy does not constitute an additional mental impairment. Plaintiff's illiteracy stemmed from his mental retardation.[6] Dr. Montgomery and Dr. Bruner cited mental retardation when explaining the basis for all of Plaintiff's limitations. (R. at 76-77, 86-87, 106-07.) Dr. Russell's evaluation found that Plaintiff's vocational limitations stem from Plaintiff's mild mental retardation. (R. at 263-65.) Moreover, no evidence exists to demonstrate that Plaintiff's inability to read and write was anything more than a limitation caused by his mental retardation.

Further, Dr. Montgomery and Dr. Bruner reviewed Plaintiff's records and diagnosed Plaintiff with a severe impairment of mental retardation, but neither diagnosed another impairment. (R. at 74, 84, 94, 104.) Also, after examining Plaintiff, Dr. Russell diagnosed Plaintiff with mild mental retardation, but did not diagnose Plaintiff with another impairment. (R. at 263-65.) Therefore, Plaintiff's illiteracy did not constitute an additional impairment.

---

[6] As discussed above, while the ALJ did not find that Plaintiff's illiteracy constituted an additional impairment, the ALJ properly took it into account when determining that Plaintiff experienced deficits in adaptive functioning. (R. at 17.)

Alternatively, even if Plaintiff's illiteracy was an additional impairment and not merely a symptom of his mental retardation, it did not constitute an additional impairment sufficient to meet the listing, because it did not cause additional and significant work-related impairments. Although, the regulations do not define what constitutes an additional impairment, courts have found that that an impairment meets the criteria if it qualifies as a severe impairment at step two of the sequential evaluation. *Markle v. Barnhart*, 324 F.3d 182, 188 (3d Cir. 2003); *Luckey*, 890 F.2d at 669. Thus, Plaintiff must demonstrate that the additional mental impairment "has more than a slight or minimal effect on [the claimant's] ability to perform work." *Buckner*, 213 F.3d at 1011 (quoting *Sird v. Charter*, 105 F.3d 401, 403 (8th Cir. 1997)) (internal quotations omitted). "In this circuit, we follow the rule that if a claimant cannot return to his past relevant work, he has established a work related limitation of function which meets the requirements of § 12.05(C)." *Flowers v. U.S. Dep't of Health & Human Res.*, 904 F.2d 221, 214 (4th Cir. 1990) (citing *Branham v. Heckler*, 775 F.2d 1271, 1273 (4th Cir.1985)); *see also Luckey*, 890 F.2d at 669 (noting that a finding that claimant could perform his past relevant work indicates that claimant does not suffer from any other limiting impairment).

Here, Plaintiff's past relevant work as a store laborer qualifies as unskilled work. (R. at 22.) Unskilled work requires "understanding, remembering, and carrying out simple instructions, making judgments that are commensurate with the functions of unskilled work — *i.e.*, simple work-related decisions, responding appropriately to supervision, co-workers and usual work situations, dealing with changes in a routine work setting." SSR 96-9. The ALJ determined that Plaintiff could perform work at all exertional levels, but was unable to read and write and was limited to understanding and following through with short, simple, verbal

instructions while requiring occasional supervision. (R. at 19.) The VE testified that based upon Plaintiff's RFC, Plaintiff could perform his past relevant work. (R. at 63-67.)

Substantial evidence supports the determination that Plaintiff could perform his past unskilled work as a store laborer. Plaintiff tried to look for similar jobs after moving to Virginia, but could not find a job in that line of work. (R. at 179, 262.) During his time as a laborer, Plaintiff had no difficulty performing his duties of sweeping and picking up boxes, and if a supervisor told or showed Plaintiff what to do, Plaintiff could complete the task without supervision. (R. at 39, 50.) Also, Plaintiff cleaned the house and ironed clothes. (R. at 241.) He could count change, handle a savings account with help and could understand simple instructions "pretty well." (R. at 243-44.) Thus, the ALJ did not err in deciding that Plaintiff did not have another mental impairment causing additional limitations; therefore, Plaintiff's condition did not meet listing § 12.05(C).

## IV. CONCLUSION

Based on the foregoing analysis, the Court DENIES Plaintiff's Motion for Summary Judgment (ECF No. 14); GRANTS Defendant's Motion for Summary Judgment (ECF No. 16); and AFFIRMS the final decision of the Commissioner.

Let the Clerk file this Opinion electronically and notify all counsel accordingly.

An appropriate Order shall issue.

/s/
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: August 8, 2014